UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| DALE URICH | ) |
| | ) |
| Plaintiff, | )     3:07-cv-00068 JWS |
| | ) |
| vs. | )     ORDER AND OPINION |
| | ) |
| MATTHEW M. FRAIZE, and the | )     [Re: Motions at Docket 33, 42] |
| MUNICIPALITY OF ANCHORAGE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## I. MOTIONS PRESENTED

Plaintiff Dale Urich ("Urich") filed a motion at docket 33 asking the court to compel defendants to more fully respond to certain discovery requests. Defendants Matthew M. Fraize ("Fraize") and the Municipality of Anchorage ("MOA") filed a cross-motion at docket 42 asking the court to compel Urich to provide them access to information and records concerning his medical damages and his employment and earning capacity and seeking a protective order. Both motions are fully briefed. Oral argument has not been requested and would not assist the court.

## II. BACKGROUND

Urich filed this action in Alaska state court against municipal police officer Fraize and his employer, MOA, alleging violations of rights guaranteed under AS 11.81.370, AS 12.25.070, and the Alaska Constitution. He also alleged violations of the due

process clause of the United States Constitution pursuant to 42 U.S.C. § 1983.[1]  The lawsuit was removed to this court pursuant to 28 U.S.C. § 1446.[2]

Urich claimed that police used excessive force when they responded to a 911 call in an incident on June 26, 2006.[3]  Urich claimed that police, "physically assaulted Mr. Urich without provocation, and without probable cause," although they were "well aware" that Urich "was a paraplegic without the use of his legs."[4]  As a result, Urich claimed he "sustained severe physical bodily injury causing great pain to the body, mental anguish, fright, anxiety and humiliation as well as medical expenses and other expenses," and that he has been "deprived of transacting normal daily lifestyle activities."[5]  Urich requested compensatory and punitive damages as well as costs, interest, and attorney's fees.

This court has jurisdiction over Urich's §1983 claim pursuant to 28 U.S.C. § 1331 and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

### III.  STANDARD OF REVIEW

Discovery rules are liberally construed to effect the just, speedy, and inexpensive resolution of litigation.[6]  The Federal Rules of Civil Procedure give parties the right to "obtain discovery regarding any nonprivileged matter which is relevant to any party's claim or defense . . . ."[7]  Furthermore, such "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

---

[1] Doc. 1-2 ¶ 7.

[2] Doc. 1.

[3] Doc. 1-2 at ¶ 6.

[4] *Id.*

[5] Doc. 1-2 ¶ 13.

[6] 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure*, § 2001 at 44 (2d ed. 1994) ("*Wright*").

[7] Fed. R. Civ. P. 26(b)(1).

discovery of admissible evidence."[8]  Professor Wright instructs that "[t]he rules . . . permit the broadest scope of discovery and leave it to the enlightened discretion of the district court to decide what restrictions may be necessary in a particular case."[9]  The Ninth Circuit observes these principles and has emphasized that "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth."[10]  However, discovery is not unfettered.  All discovery requests are subject to limitations against discovery which is unreasonably cumulative, seeks information which the requesting party had ample opportunity to obtain in other litigation, or imposes a burden or expense which outweighs its likely benefit under the circumstances of the particular case.[11]  A party may interpose objections to discovery requests.[12]

## IV.  DISCUSSION

### A. Duty to Confer

Fed. R. Civ. P. 37(a)(1) provides that when a party fails to make a disclosure or to provide discovery, the other party may move to compel.  Such a motion must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to secure the disclosure without court action."  The record here leaves the court wondering why the parties did not more clearly and succinctly demonstrate that they did confer in good faith to the extent and in the format contemplated by D.Ak.LR 37.1(a).

That local rule is meant to require the lawyers talk to one another in person–face to face when, as here, they are in the same community–in a sincere and civil effort to resolve discovery disputes and to document that in a single document, a certificate.

---

[8] *Id.*

[9] *Wright*, § 2036 at 488.

[10] *See Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995).

[11] Fed. R. Civ. P. 26(b)(1) imposes these limitations which are more fully described in Fed. R. Civ. P. 26(b)(2)(C).

[12] *E.g.*, Fed. R. Civ. P. 34(b)(2)(B)(C) concerning requests for production of documents.

-3-

Had the court's trial schedule not delayed the resolution of the pending motions so long, the court might have considered denying both motions for failure to provide a simple certificate averring that the lawyers had actually discussed all the discovery issues face to face. However, in light of the fact that swords have been figuratively drawn, the motions fully briefed, and by digging through the various exhibits the court has found evidence of at least one face-to-face meeting, the court concludes that requiring a further effort at resolution by consensus would achieve only delay. The court will treat the evidence of the parties' efforts to confer, which is in the record,[13] as sufficient to warrant consideration of both motions. Both lawyers are **warned** that in the future, the court will expect them to provide the necessary information in a single certificate that makes clear they have lived up to their duty to confer.

## B.  Plaintiff's Discovery Requests

Urich complains that defendants have not provided a full and complete response to his first set of interrogatories and requests for production. The discovery at issue is four interrogatory questions and five requests for production. The four interrogatories are as follows:

> **Interrogatory #1**: Information regarding whether defendant Fraize has had any prior excessive force complaints.
> **Interrogatory #2**: Information regarding whether defendant Fraize has had any prior excessive force lawsuits.
> **Interrogatory #3**: Information regarding any false arrest complaints filed against Fraize.
> **Interrogatory #4**: Information on whether Fraize has injured any person in the line of duty.[14]

Defendants initially objected to all requests for production, but did nonetheless respond to several. The disputed requests for production are the following:[15]

---

[13]Docs. 33-4, 33-5, 33-6; 43-3, and 43-11.

[14]Doc. 33-2.

[15]While defendants' responses to requests #8 and #9 appear to be somewhat incomplete (providing the requested names but not contact information), plaintiff does not specifically request this court to compel contact information.

> **Request for Production # 1**: Request for personal insurance policies for excessive force or false arrest lawsuits.
> **Request for Production # 2**: Request for contact information of any persons who made informal complaints against Fraize for excessive force or false arrest.
> **Request for Production # 3**: Request for internal investigation reports conducted in connection with complaints filed against Fraize regarding use of excessive force or false arrest.
> **Request for Production #4**: Request for contact information for anybody who participated in any internal investigation regarding use of excessive force.
> **Request for Production # 7**: Request for policy academy curriculum when Fraize attended and was certified, including all handouts.[16]

Defendants are willing to provide much of the requested information if this court issues a protective order regarding the information.[17] Defendants assert that a protective order is required to protect the privacy interests of officers, statutory confidentiality of personnel records (although defendants cite to no statute in particular), and "the needs of the [police] department to limit dissemination of its operational tactics, techniques, methods and training to the public."[18] Urich acknowledges that a protective order of some sort would be appropriate, but contends that the order suggested by defendants is overly restrictive.[19]

After considering the parties' arguments in light of the scope of discovery contemplated by the Federal Rules of Civil Procedure discussed above, the court concludes that the information sought is discoverable, but a protective order is appropriate, although not quite so restrictive as that suggested by defendants. Defendants offer no reason sufficient to support a requirement that a motion be filed before the use of any documents provided in the discovery request.[20] Further, no

---

[16] Doc. 34, Ex. 2.

[17] *See* doc. 43 at 3 and 13.

[18] *Id.* at 13.

[19] Doc. 50 at 2.

[20] Doc. 50 at 2.

reason is offered for the limitation in the defendants' proposed protective order to limit the response to interrogatory # 4 to persons injured who required medical treatment.[21]

The court will grant Urich's motion to compel, but subject to limitations on further dissemination of the information obtained as follows: On or before **April 18, 2008**, defendants shall provide fully responsive answers to Interrogatories 1 through 4 and shall fully respond to requests for production 1, 2, 3, and 4. Defendants shall also respond to request for production 7, but that response may be limited to materials which relate to resistance, defensive tactics, and officer safety. All materials provided by defendant pursuant to the preceding (herein after "the Information") may be disclosed to Urich, Urich's counsel, and staff working for Urich's counsel (hereinafter "the Plaintiff") subject to the following limitations:

> a. The Plaintiff shall neither disclose nor allow to be disclosed any of the Information except as provided below.
>
> b. The Plaintiff shall make no copy of any of the Information except as may be necessary to the conduct of this litigation.
>
> c. At the conclusion of this litigation, the Plaintiff shall return **all** copies of the Information to the Municipal Attorney's Office, Attn: Joyce Weaver Johnson.
>
> d. The Plaintiff may move to admit some or all of the Information into evidence, but if this is done prior to trial in connection with a filing on ECF (*e.g.,* in support of a motion for summary judgment), that part of the Information whose admission is sought shall be filed under seal.
>
> e. If any portion of the Information is to be used in a deposition, such Information shall be designated in the record by the court reporter as "confidential," and the court reporter shall transcribe the confidential portions of the deposition on a separate record with the documents utilized also included and marked "confidential."
>
> f. Any variance from the above requires a written stipulation signed by both parties, **or** an order of the Court.

---

[21]Doc. 50 at 2.

-6-

Case 3:07-cv-00068-JWS   Document 61   Filed 03/24/08   Page 6 of 10

g.  Nothing above forecloses any interested person from seeking access to the Information which is admitted in evidence pursuant a Constitutional right to view court records.

**C. Defendants' Discovery Request**s

At docket 43, defendants argue that plaintiff has refused to provide access to information and records.  Defendants' specific requests may be summarized with this extract from their proposed order:[22]

> A.  Complete information responsive to Rule 26(a)(1)(C) and Defendant's Interrogatory No. 3.
> B.  Complete Information responsive to Defendant's Request for Admission No. 11 and Interrogatory No. 4.
> C.  Complete information responsive to Defendants' Interrogatory No. 7.
> D.  Federal legal authority for refusing income information beyond five years in this case.
> E.  Complete information and documents responsive to Defendants' Request for Production No. 2.

Looked at more generally, defendants' discovery requests fall into three categories- information on Urich's damages, including his employment and earning capacity; information regarding his medical expense claims; and information about his prior encounters with police.[23]  The court finds it appropriate to deal with defendants' requests in terms of these three categories.

### 1. Damages Including Employment and Earning Capacity Information

Urich argues that defendants have misunderstood him regarding the request for employment records, and that he will provide the defendants with a supplemental disclosure clarifying his statements and providing "accurate and available" information.[24]  No notice has been provided to the court that this has occurred.  Urich does not otherwise contest defendants' request for employment and earnings capacity information.  In response to the original discovery request for records of employers and

---

[22]Doc. 45-2.

[23]Doc. 43 at 2.

[24]Doc. 50 at 4.

-7-

employment income since 1993, plaintiff replied that federal law limits this type of request to five years or less. Urich does not cite any legal authority for such a limitation, nor is this court aware of any. The court will order Urich to provide to defendants on or before **April 18, 2008**, all requested information and all Rule 26 disclosures pertaining to his damages including employment and earning capacity.

### 2. Medical Records

Defendant argues that Urich has not provided a computation of the amount of medical damages pursuant to Rule 26(a)(1)(iii), nor provided all records and billing statements to support the medical damages claim.[25] Plaintiff argued that he has provided medical releases to the defendants, as well as a list of medical care providers. Defendants claim however to only have documentation for $20,420.46 in alleged medical claims.[26] Urich will either provide defendants an itemized list of all medical costs for which he seeks to recover damages no later than **April 18, 2008**, or he shall be limited to recovery of no more than $20,420.46 for medical costs in this lawsuit.

### 3. Prior Police Interactions

Urich resists discovery regarding his prior interactions with the police on the basis that in a Section 1983 claim regarding excessive force, the Fourth Amendment "reasonableness" standard governs liability, and under that standard the relevant inquiry is only whether an officer's conduct was "objectively reasonable." In short, the inquiry focuses on the facts and circumstances known to the particular officer at the time of the event, and does not concern prior acts by the plaintiff unknown at the time of the incident.[27]

Defendants claim they request this information not to show that officers knew of a propensity for violence in plaintiff, but rather to show that crutches may be used as weapons, to show that disabled persons are "physically capable of violence against police and other persons," and to use specific instances of prior "brushes with the law"

---

[25] Doc. 43 at 11.

[26] Doc. 43 at 11.

[27] Doc. 50 at 3.

on cross examination to "controvert [plaintiff's] proposed testimony on his reputation."[28] Given the very broad scope of discovery under the Federal Rules, the information sought is discoverable, even if it may not be admissible in evidence at trial. Urich shall provide it not later than **April 18, 2008.**

## D. Requests for Costs

Urich's motion included a request for an award of costs.[29] Defendants provided a proposed protective order under which they would have been amendable to producing most of what plaintiff sought, but they did not do so before Urich's motion to compel was made.[30] Defendants also seek an award of costs.[31] Urich does not specifically contest an award of costs to defendants, and has offered little explanation for not promptly disclosing employment records and information clarifying what medical expenses plaintiff uses to make his monetary claims. Defendants argue that the court should take into account defendants' own costs due to plaintiff's "continuing obstruction, evasion and refusals," and "let the parties' cost requests zero each other out."[32] The court does not yet know what all the costs were which were incurred by the parties, so it is impossible to evaluate the "zero out" approach with any precision. However, given the relative paucity of argument by Urich about costs, the court concludes that those most likely to "come out ahead" in a fight over costs would be defendants. Since they are willing to accept a "zero out" solution, the court concludes that is a sensible resolution. Accordingly, the court will not award costs to either party.

---

[28]Doc. 56 at 2-3.

[29]Doc. 34 at 5.

[30]Doc. 43 at 13.

[31]*Id.* at 3.

[32]*Id.* at 14.

## V.  CONCLUSION

Based on the preceding analysis, the motions at dockets 33 and 44 are each **GRANTED in part** and **DENIED in part** as set forth above.

DATED at Anchorage, Alaska, this 24th day of April 2008.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE